## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

MARVIN E. SAMPLES,            )
                                )
         Plaintiff,           )
                                )
vs.                             )     CASE NO.    10-280-JPG
                                )
REACO BATTERY SERVICE CORPORATION, )
SCOTT GAMSTER, HAROLD HAWK,      )
 and CROWN BATTERY MANUFACTURING  )
COMPANY,                   )     Jury Demanded
                                )
         Defendants.         )

### COMPLAINT

NOW COMES the Plaintiff, MARVIN E. SAMPLES (hereinafter "Plaintiff"), by and through his attorneys Terrance B. McGann, Amy Elizabeth Paluch Epton, Gregory N. Freerksen, and Karen M. Rioux, of Whitfield, McGann & Ketterman, and complains of the defendants, REACO BATTERY SERVICE CORPORATION, SCOTT GAMSTER, HAROLD HAWK, and CROWN BATTERY MANUFACTURING COMPANY, as follows:

### NATURE OF THE CASE

1.     Plaintiff brings this Complaint against defendants REACO BATTERY SERVICE CORPORATION, SCOTT GAMSTER, HAROLD HAWK, and CROWN BATTERY MANUFACTURING COMPANY, seeking redress for defendants' disability discrimination and retaliation, Employee Retirement Security Act of 1974 ("ERISA") discrimination, and intentional reckless infliction of emotional distress.

2.     Defendants violated 42 U.S.C. §§ 12101 et seq. ("ADA") because the defendants refused various reasonable accommodations, harassed plaintiff for his disability or his perceived disability, discriminated against plaintiff financially for his

1

disability and for his perceived disability, and terminated plaintiff in retaliation for his demands for his rights under the ADA and in discrimination against him in order to avoid an increase in Respondents' future health care costs.

3.    Defendants violated 29 U.S.C. §§ 1001 *et seq.* ("ERISA") by discriminating against, disciplining, and/or expelling plaintiff for the purpose of interfering with the plaintiff's attainment of rights to which plaintiff was entitled under covered plans.

4.    Defendants intentionally and/or recklessly inflicted emotional distress on plaintiff in various ways, including but not limited to by refusing him leave for his treatments, failing to pay him properly, and terminating him.

### PARTIES

5.    Plaintiff is a resident of Herrin, Illinois.  At all relevant times he has lived in and been a citizen of the county of Williamson, State of Illinois.

6.    Reaco Battery Service Corporation ("Reaco") is an Illinois corporation, doing business in the county of Williamson, State of Illinois.

7.    Crown Battery Manufacturing Company ("Crown") is an Illinois and Ohio corporation, currently in the process of purchasing Reaco.

8.    Scott Gamster is an individual who is a citizen of the County of Williamson, State of Illinois.  Gamster is an owner of Reaco, and was a supervisor of Plaintiff.

9.    Hal Hawk is an individual who is a citizen of the State of Ohio.  Hawk is the President of Crown, an equitable owner of Crown, and was a supervisor of Plaintiff.

### JURISDICTION AND VENUE

10.    The instant case involves federal questions. Therefore, this Court has jurisdiction. 28 U.S.C. §§ 1331, 1343(a)(4) and 1367(a).  This action is further authorized

and filed pursuant to 42 U.S.C. § 12117 and 29 U.S.C. § 1132(e)(1).

11.     The plaintiff resides in the Southern District of Illinois

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) for the ADA claim, and pursuant to 29 U.S.C. § 1132(e)(1), for the ERISA claim.  The defendants' wrongs and omissions were committed in the Southern District of Illinois. The defendants maintain offices and conduct business within the Southern District of Illinois.

13.     Pursuant to ERISA, 29 U.S.C. § 1132(h), this Complaint shall be served upon the Secretaries of the United States Departments of Labor and the United States Department of the Treasury, by certified mail.

### ADMINISTRATIVE PROCEDURE

14.     The plaintiff has met all conditions and requirements precedent to this lawsuit.

15.     On or about October 14, 2009, the plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") which was amended on December 12, 2009.  Exhibit A.

16.     On or about March 18, 2010 the EEOC issued a "Notice of Right to Sue". Exhibit B.

### FACTUAL BACKGROUND

17.     Mr. Samples began working for the defendants ("the Company") in September 2007 as an accountant.

18.     Mr. Samples has an employment contract with the Company.  The contract called for a salary review at six months and at one year.   The contract also called for short-term disability benefits to be six months in length. The contract also called for entitlement to Reaco's Profit Sharing Plan.

3

19.     Mr. Samples was diagnosed with lung cancer on or about on May 2, 2008. Mr. Samples' prognosis was that without treatment he would die in six months.  If Mr. Samples chose treatment, that treatment would be particularly onerous, and he still would have only a one-in-three chance of survival for a year.  Mr. Samples chose to fight the cancer with every available treatment.

20.     At the time of the diagnosis, Mr. Samples requested leave and short term disability benefits from the Company for the period of the cancer treatment, as an accommodation.

21.     The Company refused, and insisted that he remain on the Company payroll, and that he continue to work during his treatments.

22.     Mr. Samples also requested the accommodation of distance work from Scott Gamster on or about June 5, 2008 and from Crown on or about June 12, 2008, a viable alternative as Mr. Samples' work was performed solely on a computer.  The Company refused this accommodation as well, and insisted that Mr. Samples report to the Company office for 10-15 hours per week, during the period of his treatments of radiation (approximately June 16, 2008 through approximately August 8, 2008), and chemotherapy (approximately June 17, 2008 through approximately October 13, 2008).

23.     Company headquarters are in Johnston City, Illinois, and Mr. Samples' treatment was in St. Louis.  Mr. Samples was therefore required to drive back and forth between the two locations on Mondays and Fridays, spending most of those days routinely vomiting in the office bathroom.  For the last three weeks of radiation therapy, Mr. Samples' daughter had to stay with him in the hospice in which he received treatments, as he could no longer care for himself.  The Company still expected Mr. Samples to show up at work for those three weeks from about July 15, 2008 through

about August 8, 2008, and in fact Mr. Samples did show up at work, with his daughter driving him back and forth from St. Louis to Johnston City, as he was no longer able to drive.

24.    From approximately August 4, 2008 through approximately October 10, 2008, Mr. Samples hovered at death's door, losing 60 pounds in one month, and was completely unable to lift himself from his bed.

25.    Beginning on or about September 15, 2008, the Company finally permitted Mr. Samples to receive short term disability benefits.

26.    Mr. Samples received his last chemotherapy treatment on or about October 13, 2008. Approximately one or two weeks after that, the Company began harassing Mr. Samples at home, by calling and inquiring when he would return to work. In order to preserve his job from October 13, 2008 through October 24, 2008, Mr. Samples resumed working 5 -8 hours per week, which was all that he could manage.

27.    When Mr. Samples returned to work, the Company threatened him with termination because of his absence, saying that the employee handbook permitted only two months of leave. Mr. Samples was hired under the Reaco contract, however, which permitted six months of leave.

28.    When Mr. Samples was forced to return to work approximately a week or two after his last chemotherapy treatment, he was in so much pain that his doctor prescribed an opium patch - one of the strongest doses of narcotics offered to cancer patients. Mr. Samples continued to use the patch until approximately December 2008. The Company was well aware of Mr. Samples' use of and need for the drug, as defendant Gamster mocked Mr. Samples for using the drug.

29.    From October 27, 2008 through December 5, 2008 Mr. Samples worked

25 – 30 hours per week.

30.    When he asked for his pay during this period, the Company said they would "figure it out later." Mr. Samples was forced to beg for his wages. The Company intentionally decided to continue paying Mr. Samples via the short term disability checks, in lieu of his wages, even though he had returned to work.

31.    The Company intentionally paid Mr. Samples very irregularly during this period. When Mr. Samples did not receive either a wage check or a disability check during this period, he was eventually forced to call the disability insurance company who informed him that the disability checks had actually been issued to the Company, and it was the Company's fault that he was not receiving his wages. Mr. Samples did not receive most of his wages for this time period until approximately December 23, 2008.

32.    In addition, the disability payments made to Mr. Samples did not fully compensate him for his lost wages – the benefits were only two-thirds of the amount of Mr. Samples' wages. Mr. Samples was working full time for the Company, but receiving only two thirds of his wages. The Company still owes Mr. Samples approximately $500 - $1,000 in wages for this time period.

33.    On December 8, 2008, Mr. Samples returned to full time work. During the summer of 2009, Mr. Samples complained about the Company's failure to increase his pay and to conduct a performance review as promised in his employment contract. On August 6, 2009, he told the Company that he believed he was being discriminated against because of his medical condition, and that he intended to file a charge with the EEOC.

34.    Mr. Samples performed well for the Company. The Company never criticized his performance or issued any discipline against him until after he was

6

diagnosed with cancer.

35.    During the summer and fall of 2009, Mr. Samples was variously harassed by increased and discriminatory performance standards, and by a negative performance review. His telephone calls to his doctor were monitored, and he was reprimanded for making and receiving those calls. He was forbidden from closing his office door, and reprimanded for missing work with the H1N1 flu virus, when he had lost 70% of his lung capacity as a result of the cancer treatments, and any respiratory illness could be fatal.

36.    Defendant Gamster told his son, Grant Gamster, the plant supervisor, the details of Mr. Samples' cancer and treatment. Grant Gamster mocked Mr. Samples' illness and treatment, and revealed the illness and Mr. Samples' treatment to many of the plant workers for no reason other than to humiliate Mr. Samples.

37.    When Mr. Samples tried to enroll in the Company's health insurance program, he was first given pretextual reasons why he could not, then asked not to enroll because it would be too expensive for the Company. In October 2009, Mr. Samples filed a charge with the EEOC, and was subsequently fired.

## COUNT I, FIRST CLAIM FOR RELIEF: THE DEFENDANTS VIOLATED THE AMERICANS WITH DISABILITIES ACT

38.    The plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

39.    The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms, conditions, and privileges of employment, including discriminatory discharge. 42 U.S.C. 12112(a); 29 C.F.R. 1630.4.

40.    At all relevant times Defendants Reaco and Crown were Plaintiff's employers under the ADA, they employed 15 or more employees.

7

41.   At all relevant times Defendants Gamster & Hawk were Plaintiff's employers under the ADA because they had the ability to hire and fire Reaco's employees, because they assigned tasks to Reaco's employees and supervised their work, and because they decided how the profits and losses of Reaco were to be distributed.

42.   At all relevant times, the plaintiff has been a qualified individual with a disability as defined by the ADA.

43.   The defendants regarded the plaintiff as a person with a physical impairment that substantially limited a major life activity. 42 U.S.C. §12102(2)(C).

44.   The ADA defines discrimination as not making reasonable accommodations to qualified individuals with a disability. 42 U.S.C. 12112(b)(5)(A); 29 C.F.R. 1630.9.

45.   Under the ADA, an employer must engage in an interactive process to identify potential accommodations that would overcome the employee's limitations. 29 C.F.R. 1630.2(o)(3) (2005).

46.   The defendants did not assist the plaintiff to obtain reasonable accommodations.

47.   The plaintiff could have been reasonably accommodated but for defendants' bad faith.

48.   The defendants' refusal to make reasonable accommodations for the plaintiff's known disability and refusal to participate in good faith in the interactive process constitutes discrimination against the plaintiff due to his disability, violating ADA 102(b)(5)(A), 42 USC 12,112(b)(5)(A).

49.   The defendants' failure to reasonably accommodate the plaintiff affected the terms, conditions and privileges of the plaintiff's employment.

8

50.     The defendants illegally discriminated against the plaintiff, violating the ADA, when they subjected him to a pattern or practice of disability discrimination.

51.     Defendants acted egregiously, with malice and/or with reckless indifference to the federally protected rights of plaintiff.

52.     Because of the defendants' wrongful discrimination against the Plaintiff, he has suffered lost wages, lost benefits, injury to reputation, injury to career, emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, loss of self-esteem and other pecuniary and non-pecuniary losses.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff requests that the Honorable Court:

A.     Enter Judgment in his favor;

B.     Declare that the defendants violated the plaintiff's rights;

C.     Order the defendants to make the plaintiff whole by providing back pay, front pay, and reimbursement for lost pension, health, social security, and other benefits in amounts to be shown at trial, plus pre and post judgment interest; past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses pursuant to 42 U.S.C. 12117;

D.     Award the plaintiff compensatory damages in an amount to be determined at trial of this matter;

E.     Award the plaintiff punitive damages in an amount to be determined at trial of this matter;

F.     Award the plaintiff attorney's fees, including legal expenses, and costs;

G.     Grant the plaintiff other just and appropriate relief.

9

## COUNT II: SECOND CLAIM FOR RELIEF: RETALIATION UNDER THE ADA

53. The plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. The ADA makes it unlawful for an employer to retaliate against an employee because the employee exercised his or her rights under the ADA.

55. The defendants willfully retaliated against the Plaintiff because he exercised his ADA rights in violation of the ADA, 42 U.S.C. 12203(a) and because he complained about, reported and protested against defendants' herein alleged unlawful employment practices.

56. On or about October 23, 2009, in retaliation for plaintiff's complaints, reports and protests of unlawful discrimination, harassment and retaliation, and because of his perceived impairment, defendants unlawfully disciplined and terminated plaintiff from his employment.

57. There was no legitimate non-discriminatory or non-retaliatory basis for plaintiff's termination from employment with defendants.

58. The defendants injured the plaintiff, causing him great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Honorable Court:

A. Direct the defendants to pay damages equal to the amount of wages, salary, employment benefits, and other compensation which he was denied or lost resulting from of the violation, plus pre-and post-judgment interest on this amount at the prevailing rate, past and future costs of borrowing funds to meet

financial obligations, and past and future out-of-pocket pecuniary losses

pursuant to 42 U.S.C. 12117;

      B.    Award the plaintiff costs to bring this action, including reasonable

expert witness fees and other costs of the action to be paid by the defendants;

      C.    Award reasonable attorney's fees;

      D.    Grant such other relief as the Court deems just and proper.

## COUNT III: THIRD CLAIM FOR RELIEF: VIOLATION OF SECTION 510 OF ERISA

59.    The plaintiff incorporates by reference all preceding paragraphs as if fully

set forth herein.

60.    Plaintiff was an employee of defendants.

61.    At all relevant times, plaintiff was a participant in a plan and/or a

beneficiary of a plan, within the meaning of ERISA, 29 U.S.C. § 1002(7) and § 1002(8),

and is authorized to sue to enforce his private rights by virtue of ERISA, 29 U.S.C. §

1132.

62.    At all relevant times, defendants were employers within the meaning of

ERISA, 29 U.S.C. § 1002(5).

63.    Defendants adopted a short term disability plan, a health insurance plan,

and a profit sharing plan to provide benefits to plaintiff.  Plaintiff was qualified for and

entitled to the benefits of those plans.

64.    Defendants intentionally interfered with, discriminated against and

retaliated against plaintiff's exercise of plaintiff's rights to benefits protected by Section

510 of ERISA, 29 U.S.C. 1140.

65.    Defendants acted with knowledge and specific intent to discriminate

11

against plaintiff, and to interfere with his rights to those benefits, and to retaliate against plaintiff for the previous exercise of his rights under those benefits.

66.    As a direct and proximate result of the discrimination, retaliation, and interference with plaintiff's rights, plaintiff has been prevented from exercising his rights to those benefits.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Honorable Court:

A.    Direct defendants to provide plaintiff with his ERISA benefits or the equivalent monetary value;

B.    Award the plaintiff costs to bring this action, including reasonable expert witness fees and other costs of the action to be paid by the defendants;

C.    Award reasonable attorney's fees; and

D.    Grant such other relief as the Court deems just and proper.

## COUNT IV: FOURTH CLAIM FOR RELIEF: INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

67.    The plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68.    Plaintiff was an employee of defendants.

69.    Plaintiff fulfilled his job duties with skill and expertise.

70.    Defendants engaged in many extreme and outrageous acts including but not limited to setting up obstacles to plaintiff's performing his job, sabotaging plaintiff's work, requiring plaintiff to work when he was too ill to work, refusing to pay plaintiff for his work, mocking and humiliating plaintiff for his illness and for his treatments informing other employees of the details of plaintiff's illness and treatment, surveilling

and wrongfully invading plaintiff's privacy, threatening to fire plaintiff for his illness, refusing to give plaintiff his disability checks, mocking the plaintiff for using the opium patch,  requiring plaintiff to work while using the opium patch, subjecting various of plaintiff's family members to the stress of helping him to work when he was too ill to work, and subjecting various of plaintiff's family members to the stress of watching him work when he was too ill to work.

71.     Defendants intended to cause plaintiff severe emotional distress.

72.     Defendants' acts were perpetuated with such recklessness as to cause plaintiff severe emotional distress.

73.    Plaintiff experienced extreme emotional distress, in that the events alleged herein caused him to become stressed and anxious, and negatively impacted his physical condition, and made his recovery from lung cancer and from his treatments slower and more difficult.

74.     The defendants injured the plaintiff, causing him great mental anguish, humiliation, degradation, physical and emotional pain and suffering.

75.     Defendants' acts, actions, and inaction directly and proximately caused plaintiff's severe emotional and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Honorable Court:

A.     Pursuant to any jury verdict for Mr. Samples, direct the defendants to pay damages equal to the amount of wages, salary, employment benefits, and other compensation which he was denied or lost resulting from of the violation, plus pre-and post-judgment interest on this amount at the prevailing rate, past and future costs of borrowing funds to meet financial obligations, and past and

future out-of-pocket pecuniary losses.

      B.     Award the plaintiff costs to bring this action, including reasonable expert witness fees and other costs of the action to be paid by the defendants;

      C.     Award reasonable attorney's fees;

      D.     Award past and future non-economic damages, for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of reputation, intimidation and inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and all other allowable damages;

      E.     Award punitive damages; and

      F.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Terrance B. McGann
One of the Attorneys for Plaintiff

Terrance B. McGann (#6199967)
Amy Elizabeth Paluch Epton (#6278817)
Gregory N. Freerksen (#0874612)
Karen M. Rioux (#6279378)
WHITFIELD, MCGANN & KETTERMAN
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
(312) 251-9700 Fax (312) 251-9701

# EXHIBIT A

# CHARGE OF DISCRIMINATION
## AMENDED

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 440-2009-07094 |

Illinois Department of Human Rights _____ and EEOC

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Mr. Marvin E. Samples | HOME TELEPHONE *(Include Area Code)*<br>(618) 942-3399 |
|---|---|
| STREET ADDRESS<br>400 Margaret Lane, Herrin, IL 62948 | CITY, STATE AND ZIP CODE | DATE OF BIRTH<br>12/15/1962 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>RESPONDENT #1<br>REACO BATTERY SERVICE CORPORATION | NUMBER OF EMPLOYEES, MEMBERS<br>15 + | TELEPHONE *(Include Area Code)*<br>(419) 334-7181 |
|---|---|---|
| STREET ADDRESS<br>17217 Route 37, Johnston City, IL 62951 | CITY, STATE AND ZIP CODE | COUNTY<br>Williamson |

| NAME<br>RESPONDENT #2<br>SCOTT GAMSTER | | TELEPHONE NUMBER *(Include Area Code)*<br>(618) 993-2954 |
|---|---|---|
| STREET ADDRESS<br>1800 Testa Dr., Marion, IL 62959 | CITY, STATE AND ZIP CODE | COUNTY<br>Williamson |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE *EARLIEST (ADEA/EPA)   LATEST (ALL)*<br>05/02/08   10/23/09 |
|---|---|

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ AGE

☒ RETALIATION   ☐ NATIONAL ORIGIN   ☒ DISABILITY   ☐ OTHER *(Specify)*

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):* **SEE ATTACHED**

**RESPONDENT #3**
HAROLD HAWK
1445 Majestic Dr., Fremont, OH 43420
Sandusky County

**RESPONDENT #4**
DC ENERGY SERVICES, INC.
1800 Testa Dr., Marion, IL 62959
Williamson County
(618) 993-2954

**RESPONDENT #5**
CROWN BATTERY MANUFACTURING COMPANY
1445 Majestic Dr., Fremont, OH 43420
Sandusky County

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>12/12/09   *[signature]*<br>Date   Charging Party *(Signature)* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*[signature]*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year)<br>12/12/09 |

I began my employment with Respondents in September 2007. My current position is Accountant. During my employment, Respondents became aware of my disability, and regarded me as disabled. Respondents also failed to accommodate my disability and discriminated against me based on my disability. My employer also created a hostile environment based on my disability and harassed me because of my disability. The Respondents breached my medical confidentiality, I was given a negative performance evaluation, denied a raise, and fired, all because of my disability, or because Respondents perceived me to be disabled. Respondents' failure to accommodate me included failed to grant me time off for necessary medical treatment, failed to permit me to work from a distant location, and failed to permit me to arrive later than my scheduled start time, when medically necessary. Other Comparators who worked for Respondents were permitted some of these accommodations, and were not similarly discriminated against.

Respondents also fired me because I might increase Respondents' future health care costs, in derogation of Respondents' duties under the Americans with Disabilities Act.

Respondents learned that I planned to file an EEOC charge in September 2009. Respondents harassed me and created a hostile environment to deter me from filing an EEOC charge based on my Americans with Disabilities Act claims. Respondents also harassed me and created a hostile work environment for me, and subjected me to different terms and conditions of employment from employees who were not perceived to be disabled, and/or who had not filed charges with the EEOC. This harassment included but was not limited to increased scrutiny, telephone monitoring, disciplinary actions, and negative comments.

I was terminated on or about October 23, 2009. I believe that the termination was because of my disability, my perceived disability, and/or because of retaliation. I have been discriminated against because of my disability or because of the perception that I was disabled, harassed because of my disability or the perception that I was disabled, and/or retaliated against because I engaged in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

In addition to the Respondents listed in the charge, I am also charging Scott Gamster, 1800 Testa Dr., Marion, Illinois 62959 (618) 993-2954, Harold Hawk, 1445 Majestic Dr., Freemont, OH 43420, DC Energy Services, Inc., 1800 Testa Dr., Marion, IL 62959 (618) 993-2954, and Crown Battery Manufacturing Company, 1445 Majestic Dr., Fremont, OH 43420.

# EXHIBIT B

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Marvin E. Samples<br>400 Margaret Lane<br>Herrin, IL 62948 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7000 1670 0012 6741 8545        CP/ATTY

☐  *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2009-07094 | **William Hubbartt,**<br>**Investigator** | **(312) 886-1663** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*    3-18-10
**John P. Rowe,**
**District Director**    *(Date Mailed)*

cc:    **REACO BATTERY SERVICE CORPORATION**